**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| HELEN C. GOLDMAN, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:09-CV-3337-RWS |
| AURORA LOAN SERVICES, : | |
| LLC, and MORTGAGE : | |
| ELECTRONIC REGISTRATION : | |
| SYSTEMS, INC., : | |
| : | |
| Defendants. : | |
| : | |

**ORDER**

This case comes before the Court on Defendants' Renewed Motion to Dismiss Plaintiff's (Amended) Complaint for Damages [20], and Defendants' Motion to Strike Plaintiff's Opposition to Motion to Dismiss [26]. After considering the record, the Court enters the following order.

**Background**

This case arises out of Plaintiff's March 4, 2004 refinancing of the property located at 6476 Bellevue Drive, S.W., Conyers, Georgia 30094. Plaintiff "is an elderly, financially unsophisticated woman, who relied on the broker, the lender, and the closing attorney to deal fairly and honestly with her

AO 72A
(Rev.8/82)

and to get her the best possible loan." (Dkt. [19] at ¶ 22). Plaintiff asserts that she was solicited by agents for Source Financial, a mortgage broker, to apply for an adjustable rate, no document loan with Aegis Wholesale Corporation, the original lender. (Id. at ¶ 14). She alleges that the Good Faith Estimate and Truth in Lending disclosures provided to her by Source Financial did not disclose that she was being charged "thousands of dollars in hidden yield spread premiums, higher interest rates, and higher loan costs than her credit score warranted." (Id. at ¶ 16). Plaintiff alleges that she was a victim of predatory lending and that an adjustable-rate, interest-only loan was not appropriate for her. (Id. at ¶¶ 23, 24). In addition to a loan inappropriate for her credit score, Plaintiff also alleges that "Defendants'" appraisal overvalued her home by approximately $125,000. (Id. at ¶ 27).

Plaintiff alleges that she was not given the HUD Settlement Statement or Truth In Lending statement sufficiently prior to closing, and when at closing Plaintiff questioned the accuracy of some of her financial information that appeared on closing documents, the closing attorney just gave her more documents and told her to sign them. (Id. at ¶¶ 18, 20, 25). Plaintiff asserts that because of "Defendants' failure" to provide Truth in Lending disclosures as required, she was entitled to rescind the loan and exercised her right to do so,

2

but Defendants failed to take actions to respond appropriately to the rescission notice. (Id. at ¶¶ 33-35). Rather, on October 2, 2009, Plaintiff received a letter and a Notice of Foreclosure Sale. (Id. at ¶ 37, Dkt. [1-8]). The letter listed Defendant Aurora Loan Services, LLC ("Aurora") as the loan servicer and Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as the creditor. (Id.). Neither Defendant was an original party to Plaintiff's refinancing.

On October 13, 2009, Plaintiff asserts that she sent a qualified written request ("QWR") to Aurora requesting a copy of the original note, any allonges, assignments of security deed, and a copy of Aurora's proof of right to service the loan, but Aurora failed to timely respond. (Id. at ¶ 38, 39). Plaintiff asserts that neither Aurora nor MERS is listed on the allonge, that it is undated, and is signed by an individual who did not hold the position at the original lender that is asserted on the allonge. (Id. at ¶¶ 42-44).

Plaintiff asserts that while Aurora claims to be the servicer, there is no indication as to who it is serving the loan for. (Id. at ¶ 45). MERS is not a lender and does not hold the note, but is rather the nominee for the original lender, Aegis, and does not have the right to foreclose, claims Plaintiff. Based upon these allegations, Plaintiff asserts causes of action for violations of the

Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. (Counts I, II), the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601 *et seq*. (Count III), the Georgia Fair Business Practices Act ("FBPA"), O.C.G.A. § 10-2-390 *et seq*. (Count V), the Unfair or Deceptive Practices Toward the Elderly Act ("UDPTA"), O.C.G.A. § 10-1-850 *et seq*. (Count VI), and for fraud and fraud in the inducement (Count IV), and seeks punitive damages (Count VII) in addition to other relief.

By prior Order [17] of the Court, Counts I, II, V, and VI were dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Court, having dismissed these claims, will not consider Plaintiff's reassertion of Counts I, II, V, and VI in her Amended Complaint for Damages [19]. By prior Order [17], the Court denied Defendants' Motion to Dismiss as to one aspect of Count III under RESPA, and as to Counts IV for fraud and fraud in the inducement, and Count VII as to punitive damages. The Court afforded Plaintiff an opportunity to file an amended Complaint in order to satisfy F.R.C.P. 9(b) that fraud be plead with particularity. Further, the Court stated that "[f]ollowing Plaintiff's filing of an amended complaint . . . Defendants may renew their motion to dismiss Plaintiff's fraud claims." (Dkt. [17] at 13).

4

AO 72A
(Rev.8/82)

Plaintiff filed an Amended Complaint for Damages [19] on October 8, 2010.  Defendants filed a Renewed Motion to Dismiss [20] on October 22, 2010.  Plaintiff's Response [24] was filed on November 17, 2010.  Defendants' Motion to Strike [26] was filed on November 29, 2010.

## Discussion

### I.     Defendant's Motion to Strike [26]

Defendants move the Court to strike Plaintiff's Response [24] as untimely.  Defendants' Motion to Dismiss [20] was filed on October 22, 2010.  Local Rule 7.1 required that Plaintiff's Response to Defendants' Motion to Dismiss be filed within 14 days.  Plaintiff filed a Motion for Extension of Time [21] on November 6, 2010 requesting an extension to November 15, 2010 to respond.  On November 15, 2010 the Court issued an Order [23] granting Plaintiff's Motion for Extension of Time [21].  Plaintiff was afforded until November 15, 2010 to file her response.  Therefore, Plaintiff's Response [24] filed on November 17, 2010 was untimely.  Although the Court recognizes the merit of Defendants' Motion to Strike [26], Defendants have not been prejudiced by the filing of said Response.  In the interest of deciding this case on its merits, Defendants' Motion to Strike [26] is **DENIED**.

**II.     Defendants' Renewed Motion to Dismiss [20]**

    A.     Standard for Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

At the motion to dismiss stage, "all-well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260

(11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. The court does not need to "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

B. Plaintiff's RESPA Claim (Count III)

By prior Order [17], the Court dismissed Plaintiff's claim that Aurora violated RESPA by failing to notify her of the transfer of servicing of the loan. Therefore, Plaintiff's reassertion of her RESPA claim in her Amended Complaint [19] on that basis will not be addressed. The second basis for Plaintiff's RESPA claim is Aurora's alleged failure to respond to a QWR she sent to Aurora on October 13, 2009.

RESPA mandates that if a servicer of a federally related mortgage loan receives a QWR from the borrower for information relating to the servicing of such loan, the servicer shall acknowledge receipt within 20 days and take any necessary action within 60 days. 12 U.S.C. §§ 2605(e)(1)(A), (e)(2). A QWR is written correspondence that "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error *or* provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii) (emphasis added). Plaintiff's asserted

7

QWR is entitled a "Debt Validation Notice" pursuant to the Fair Debt Collection Practices Act. Defendants assert that Plaintiff's letter, is "by its own terms, not a QWR under RESPA." (Dkt. [5-1] at 14 (emphasis omitted)). However, Defendants' argument neglects the actual contents of the letter, which *inter alia*, states:

> Please provide a payment history for the life of the alleged dept [*sic*], per the provisions of the Truth in Lending Act, and RESPA, as this communication is considered a "Qualified Written Request."
>
> Note: This is the 2nd Qualified Request for this information, leaving Aurora Loan Services, currently in violation of Federal Law, as the information was not received within the specified time constraints of the law.

(Dkt. [1-9] at ¶ 8). Defendants allege that Plaintiff's letter was not a QWR because it did not set forth any reasons for why the account was in error, but Defendants fail to recognize that the definition of a QWR is disjunctive and also "includes a statement . . . [that] provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii).

In addition to arguing that Plaintiff's letter was not a QWR, Defendants argue that Plaintiff failed to deliver the letter to any of the three addresses provided in the Notice of Transfer: (1) the Customer Care Department in

8

Scottsbluff, Nebraska; (2) the Tax Department in Dallas, Texas; or (3) the Insurance Center in Van Nuys, California.  Instead, Plaintiff sent the QWR to Aurora's corporate headquarters in Littleton, Colorado.  The Code of Federal Regulations provides that: "[b]y notice either included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid, a servicer may establish a *separate and exclusive* office and address for the receipt and handling of qualified written requests."  24 C.F.R. § 3500.21(e)(1) (emphasis added).  Although a loan servicer is permitted under RESPA to designate a separate and exclusive address for a QWR, Defendants' argument fails because none of the addresses provided in the Notice of Transfer are designated as a "separate and exclusive office and address for the receipt and handling of qualified written requests."  Id.

Plaintiff's Complaint adequately sets forth a RESPA claim for failure to respond to a QWR.  Count III of Plaintiff's Amended Complaint makes it clear that the alleged violation was committed by Aurora and specifies the conduct that constitutes the violation.  Therefore, Defendants' Renewed Motion to Dismiss [20] is **DENIED** as to Plaintiff's RESPA claim for failure to respond to a QWR.

9

C.      Plaintiff's Claim of Fraud and Fraud in the Inducement (Count IV)

Plaintiff alleges that MERS is liable for the fraud of the original lender Aegis, as an assignee of Aegis. (Dkt. [19] at ¶¶ 75, 76). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A complaint that is "devoid of specific allegations with respect to each defendant" fails to meet the particularity standard of Rule 9(b). Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1317 (citation omitted). "In a case involving multiple defendants the complaint should inform each defendant of the nature of his alleged participation in the fraud." Id. (citation omitted). The requirement of pleading fraud with particularity necessitates that a Plaintiff set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.

Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1362, 1371 (11th Cir. 1997).

10

Plaintiff's basis for asserting that MERS is liable for the fraud of Aegis is that MERS is an assignee of Aegis.  This claim is not factually supported in the record.  (Dkt. [19] at ¶ 67).  MERS is not an assignee of Aegis, but rather, per the terms of the Security Deed, a nominee of Aegis and its assigns that may exercise the right to foreclose.  Moreover, Plaintiff fails to satisfy the specificity requirements for pleading a claim of fraud as against either of the Defendants.  Plaintiff asserts that she "alleged facts showing that [ ] Aegis, Source Financial, the appraiser, and the closing attorney engaged in fraudulent acts by deceptively convincing Plaintiff that it was in her benefit to apply for a high-risk loan, by misrepresenting the true cost of the loan to the Plaintiff, by listing Plaintiff's income and assets as more than they were, and by providing an inflated appraisal."  (Dkt. [24] at 3).  Even assuming the veracity of Plaintiff's claims, the acts she alleges as the basis of her fraud claim were undertaken by Aegis, Source Financial, the appraiser, and the closing attorney.  None of these individuals are a party to the action.

As the basis for her claim for fraud and fraud in the inducement (Count IV), Plaintiff asserts that "Defendant MERS claims to be the creditor and as such is liable to Plaintiff for the actions of its assignor, Aegis."  (Dkt. [19] at ¶ 67).  But as noted above, MERS is not legally responsible for the acts of Aegis,

11

because it is not an assignee of Aegis.  Plaintiff's claim for fraud and fraud in the inducement fails to state a claim as a matter of law.  Defendants' Renewed Motion to Dismiss [20] as to Count IV of Plaintiff's Amended Complaint [19] is **GRANTED**.

### D. Plaintiff's Claim for Punitive Damages (Count VII)

Plaintiff's request for punitive damages is based upon her allegations of fraud and fraud in the inducement.  Punitive damages may be awarded only where a "defendant's actions show willful misconduct, malice, fraud, wantonness, oppression, or conscious indifference to consequences."  O.C.G.A. § 51-12-5.1(b).  Because the Court has dismissed Plaintiff's claim for fraud and fraud in the inducement for failure to state a claim, Defendants' Renewed Motion to Dismiss [20] as to Count VII of Plaintiff's Amended Complaint [19] is **GRANTED**.

## Conclusion

For the aforementioned reasons, the Defendants' Motion to Strike [26] is **DENIED**.  Defendants' Renewed Motion to Dismiss [20] as to Plaintiff's RESPA claim (Count III) is **DENIED**.  Defendants' Renewed Motion to Dismiss [20] as to Plaintiff's claims for fraud and fraud in the inducement (Count IV) and request for punitive damages (Count VII) is **GRANTED**.

12

Plaintiff has stated a claim for violation of RESPA with regard to the QWR. This is Plaintiff's sole viable claim in this action, as all other claims have been dismissed, either by the Court's previous Order [17] or by this Order.

    **SO ORDERED**, this  29th  day of August, 2011.


                                              _____
                                              RICHARD W. STORY
                                              UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)